# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN KOPCZAK, )
)
        Plaintiff, )
)
        v. )   02: 06cv0766
)
BOROUGH OF SCOTTDALE, THE )
SCOTTDALE POLICE DEPARTMENT, )
POLICE OFFICER DENNIS ELCOCK, )
Individually and in his capacity as a Police )
Officer for the Scottdale Police Department, )
and CHIEF OF POLICE BARRY PRITTS, )
)
        Defendants. )

## MEMORANDUM OPINION AND ORDER

Presently before the Court is the MOTION FOR SUMMARY JUDGMENT, with brief in support, filed by Defendants (Document Nos. 12 and 13) and the RESPONSE and BRIEF IN OPPOSITION filed by Plaintiff (Document Nos. 18 and 19, respectively).

The issues have been fully briefed and the matter is ripe for disposition. After a careful consideration of the motion, the filings in support and opposition thereto, the memoranda of the parties, the relevant case law, and the record as a whole, the Court finds that there is not sufficient record evidence upon which a reasonable jury could return a verdict for Plaintiff, John Kopczak on his federal claims of alleged violations of due process, false arrest, *Monell* claims, and failure to train and supervise. The Court will also dismiss without prejudice the additional pendent state claims of alleged violations of due process, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence.

**Procedural Background**

Plaintiff, John Kopczak ("Plaintiff") brought this lawsuit on June 9, 2006, by the filing of a eight-count Complaint against the Borough of Scottdale, the Scottdale Police Department, Police Officer Dennis Elcock, individually and in his capacity as Police Officer for the Scottdale Police Department, and Chief of Police Barry Pritts. The Complaint sets forth the following claims:

Count I - "Due Process Claims Against Defendants for Failure to Investigate." The Complaint sets forth a claim that Plaintiff's due process rights under the Fourteenth Amendment were violated by Defendants failure to investigate adequately. Count I also sets forth a claim for false arrest.

Count II - "Supervisory Liability Claims against the Chief of the Defendant's Police Department." Plaintiff alleges that the "Defendant Chief, . . ., with deliberate indifference to the rights of criminal suspects, failed to train and supervise adequately. In so doing, Defendant Chief encouraged, condoned or tacitly acquiesced in unconstitutional misconduct, including without limitation, the suppression of exculpatory material evidence and the egregious failure to investigate."

Count III - "Model (sic) Claims against the Borough of Scottdale." Plaintiff alleges that the Borough of Scottdale "by and through its policymakers, created and maintained a policy, custom or practice of failing to properly supervise, train and discipline it's (sic) police officers including Defendant Elcock."

Count IV - "Due Process Claims against Defendants for Suppression of Evidence and Failure to Investigate." Plaintiff alleges, inter alia, that "[a]cting with deliverabte (sic)

2

indifference by withholding evidence, Defendants violated Plaintiff's clearly established Fourteenth Amendment right to due process of law as interpreted by he (sic) United States Supreme Court in Brady v. Maryland and its progeny."

Count V - "Supervisory Liability Claims Against Defendant Borough and Chief." The claims alleged in Count V appear to mirror the claims alleged in Counts II and III.

Count VI - "State Constitution Claims against Defendants for Violation of Due Process." In Count VI, Plaintiff alleges claims under Pennsylvania's Constitution for alleged due process violations, incorporating the allegations in previous counts of the Complaint.

The Complaint contains two "Count VIIs." In Paragraphs 76-78, Plaintiff alleges a state law tort claim against all defendants for intentional infliction of emotional distress and in Paragraphs 79 - 81, he alleges a state law tort claim against all Defendants for negligent infliction of emotional distress.

Count VIII - "State Tort Law Claims against Defendant for Negligence." Plaintiff alleges that "Defendant's (sic) owed Plaintiff a duty of care and breached that duty - through their own misconduct or the misconduct of persons under their supervision and control, by failing to properly investigate the minor girls claims."

The Defendants jointly seek summary judgment on all of Plaintiff's federal and state law claims.

**Background**

Pursuant to the Order of Court filed February 2, 2007, Defendants filed a Concise Statement of Material Facts. Although instructed to do so, Plaintiff failed to file his Response Concise Statement. Accordingly, in accordance with Local Rule 56.1(E), for the purpose of

deciding the instant motion, the statements contained in Defendants' Concise Statement of Material Facts will be deemed admitted.

On or about Saturday, July 31, 2004, a 9-1-1 call was placed to Scottdale Police Department by Jennifer Palmiscno, mother of Kayla Palmiscno, an eight year old minor, to report an incident which involved her daughter. Ms. Palmiscno reported that an older white male, with a mustache and wearing a black leather cap stopped near her eight year old daughter and two other friends while they were playing in the park on South Chestnut Street. The man allegedly asked the children if they wanted a ride. Ms. Palmiscno reported that the man was driving a light blue minivan with rust along the bottom and a ladder on top of it.

The next day, Sunday, August 1, 2004, Daniel Berry stopped at the Scottdale Police Station and requested that Officer Dennis Elcock talk with the Chelsea Stewart, the minor daughter of his girlfriend, about an encounter similar to the incident reported on July 31, 2004.

On August 1, 2004, Officer Elcock spoke with Chelsea Stewart. She reported that on Thursday, July 29, 2004, between noon and 2:00 PM, she and Rebecca Blackburn, who at the time was 12 years old, were asked by the driver of a light blue van if they needed a ride. Chelsea Stewart described the driver of the van as being bald on the top of his head and the remaining hair was grey, wearing large round eyeglasses, and having a mustache. Ms. Stewart specifically identified Plaintiff as the suspect.

Officer Elcock also spoke with Rebecca Blackburn, who described the driver of the light blue van as a white older male with a full head of brown hair.

On Saturday, August 7, 2004, Officer Elcock spoke with Plaintiff at the Scottdale Police Station. Plaintiff informed Officer Elcock that he was working on Thursday, July 29,

4

2004 and that at all times during the day he had been accompanied by two other co-employees. Plaintiff also told Officer Elcock that he had been in town on Friday, July 30, 2004.

On Saturday, August 7, 2004, Leah Grabiak, a fifteen year old minor, reported to Officer Elcock that on July 28, 2004 or July 29, 2004, between 6:00 PM and 7:00 PM, she had been approached by a man in a light blue minivan who asked if she wanted a ride. Ms. Grabiak described the driver as an older white male with crooked teeth and described the van as having a ladder on top.

Later that day, Officer Elcock met with the four minor females and individually showed them a photographic lineup. Three of the girls independently pointed to the picture of Plaintiff as being the person that most resembled the man that had asked them for a ride. Leah Grabiak narrowed the suspect down to two photographs, with Plaintiff's photograph being one of the two she selected from the lineup.

Approximately a week later, on August 13, 2004, Officer Elcock again spoke with Jennifer Palmiscno, the mother of Kayla Palmiscno. Ms. Palmiscno informed Officer Elcock that the suspect had spoken with her daughter on July 30, 2004, between 5:30 and 8:00 pm.

On August 31, 2004, Plaintiff voluntarily took a voice stress test. In the opinion of the examining officer, Plaintiff did not answer the questions truthfully.

On September 1, 2004, Plaintiff's immediate supervisor informed the Scottdale Police Department that employee time sheets are handwritten by each of the employees.

On September 21, 2004, the four minors accompanied Officer Elcock to the District Attorney's Office and met with Assistant District Attorney Wayne Gongaware. The girls each described the incident of a man in a light blue minivan approaching them and asking if they

needed a ride. At the conclusion of the meeting, Assistant District Attorney Gongaware advised Officer Elcock that probable cause existed for the arrest of Plaintiff on Criminal Attempt and Harassment charges.

On September 23, 2004, a police Criminal Complaint and Affidavit of Probable Cause was prepared. Plaintiff was arrested on three counts of Criminal Attempt and three counts of Harassment and arraigned on September 27, 2004. Bail was set at $50,000 straight. Unable to make bond, Plaintiff was remanded to the Westmoreland County Prison.

On October 6, 2004, the first preliminary hearing was held before District Justice J. Bruce King at which Ms. Grabiak and Ms. Stewart testified. Their testimony was consistent with the information which they had previously provided to Officer Elcock and to the District Attorney's office.

On October 27, 2004, a bail reduction hearing was held. Plaintiff was granted bond in the amount of $10,000 and was remanded to "house arrest."

On December 12, 2004, a second preliminary hearing was held at which Kayla Palmiscno testified consistently with the information which she had previously provided to Officer Elcock and to the District Attorney's office. The District Justice determined, after hearing the testimony of the three victims, that probable cause existed and bound all charges over for trial.

On December 15, 2004, Chelsea Stewart, Rebecca Blackburn and Kayla Palmiscno, accompanied by their parents, informed Officer Elcock that the statements they had previously given were inaccurate. On December 17, 2004, Officer Elcock contacted Assistant District

6

Attorney Gongaware and advised him of the new information. Thereafter, the District Attorney's office caused the charges to be withdrawn against Plaintiff.

Ms. Stewart, Ms. Blackburn and Ms. Palmiscno were referred to juvenile court for filing false reports.

**STANDARD OF REVIEW**

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249)). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id*. (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party at trial. The inquiry performed is the threshold inquiry of determining whether there is need for a trial - whether, in other words, there are any genuine

factual issues that properly can be revolved only by a finder of fact because they may reasonably be resolved in favor of either party.

> This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

*Anderson*, 477 U.S. at 250. *See also Scott v. Harris,* -- U.S. --, 127 S. Ct. 1769 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment.").

## DISCUSSION

A.  *Claims Against the Scottdale Police Department*

As an initial matter, the Court will dispose of the claims against the Scottdale Police Department. The Police Department is not an entity capable of being sued as it is a department within the Borough government and, thus, dismissal is appropriate. *Johnson v. City of Erie,* 834 F. Supp. 873 (W.D. Pa. 1993). The law provides that a municipal police department is not a proper party to a § 1983 action because it is merely a sub-unit of the city and not a separate corporate entity. *Id.* at 878-79.

B.  *Federal Claims Against Police Officer Dennis Elcock*

Plaintiff's federal claim(s) in this matter are based on Title 42, United States Code, section 1983, which provides civil remedies against any person who, under color of state law, deprives another person of rights protected by the United States Constitution. *See Collins v.*

*City of Harker Heights*, 503 U.S. 115, 120 (1992). Section 1983 does not, by itself, confer any substantive rights, but rather serves as a vehicle to enforce rights granted under the Constitution or federal law. *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979). Accordingly, to state a claim under § 1983, a plaintiff must "prove a violation of the underlying constitutional right." *Daniels v. Williams*, 474 U.S. 327, 330 (1986).

Plaintiff alleges that his due process rights were violated when Officer Elcock "failed to investigate adequately" the claims of the four minor females and by the "suppression of evidence." He also contends that he was subjected to a false arrest.

The Court finds and rules that the only legitimate claim in terms of a cognizable legal cause of action is the claim that Plaintiff was falsely arrested. The constitutionality of an arrest by a state official is governed by the Fourth Amendment rather than a due process analysis. *See County of Sacramento v Lewis*, 523 U.S. 833, 842-43 (1998). The Court's analysis, therefore, will be appropriately limited to whether Defendants violated Plaintiff's Fourth Amendment rights - not whether they violated his constitutional due process rights. *See Baker*, 443 U.S. at 142-43 (interpreting § 1983 false imprisonment claim as grounded in Fourth Amendment rights.)

"The proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had <u>probable cause</u> to believe the person arrested had committed the offense." *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988) (emphasis added). Probable cause exists where the facts and circumstances within an officer's knowledge "would warrant a reasonable person

to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995).

The existence of probable cause precludes a § 1983 suit for false arrest. The Constitution does not require an arresting officer to conduct an incredibly detailed investigation at the probable cause stage. *Spiegal v. Cortese,* 196 F.3d 717 at 724-25 (7th Cir. 1999). Also, a determination by a state court of probable cause in a criminal case is not conclusive on the same issue in a subsequent civil action for false arrest. *United States v. Cruz*, 910 F.2d 1072, 106 (3d Cir. 1990).

It is not contested that during their depositions, the four minor females who had provided information to Officer Elcock, each confirmed that she had advised Officer Elcock that an individual fitting Plaintiff's description approached them and offered them a ride in his minivan. The fourth girl told Officer Elcock that she was a witness to one event. All four girls told Officer Elcock and their parents that the suspect was driving a light blue minivan with rust around the bottom and a ladder on the top.

Ms. Grabiak testified during her deposition that Officer Elcock was not prompting her; rather he just asked what happened.

The District Attorney's office determined that there was probable cause and approved the preparation of an arrest warrant which was issued upon which Plaintiff was arrested.

During the preliminary hearings on October 6, 2004 and December 12, 2004, the three "victims" all testified consistently with the information which they had previously

provided to Officer Elcock and to the District Attorney's office. All the criminal charges were held for trial.

It was not until December 15, 2004, that Kayla Palmiscno admitted for the first time that she invented the entire story. Also, Rebecca Blackburn denied that she was a witness to the incident between Plaintiff and Chelsea Stewart. Ms. Stewart admitted that Ms. Blackburn was not a witness, but has never denied that she was approached by Plaintiff. When Officer Elcock learned that the "victims" had recanted their story, he informed the District Attorney's office and all charges against the Plaintiff were dropped.

After deliberate consideration, the Court finds and rules that Officer Elcock clearly had probable cause to believe that Plaintiff had engaged in an attempt to lure three young girls, on separate occasions, into his minivan. There is no record evidence to substantiate Plaintiff's claim that he was falsely arrested. Accordingly, summary judgment will be granted on Plaintiff's federal claims against Officer Elcock.

C. *Federal Claims Against Chief of Police Barry Pritts*

The Court finds and rules that Plaintiff's claims of supervisory liability against Chief of Police Barry Pritts must fail because the record is devoid of any evidence that Chief Pritts had any personal involvement whatsoever in the arrest of Plaintiff.

A supervisory governmental official may not be held liable under § 1983 for actions taken by those under his charge on a theory of *respondeat superior* liability. There must be an affirmative link between the supervisor's conduct and the alleged violation. *See Baker v. Monroe Township*, 50 F.3d 1186 (3d Cir. 1995).

11

The summary judgment evidence of record, which include the police reports and the affidavit of Officer Elcock, demonstrates that Officer Elcock conducted the investigation, and he drafted and executed the criminal complaint and Affidavit of Probable Cause. The record is devoid of any evidence that there was an affirmative link between any conduct of Chief of Police Pritts and the alleged false arrest.

Moreover, and significantly, the Court has found that probable cause existed for the arrest of Plaintiff. Because the Court finds that there is no evidence that Officer Elcock violated Plaintiff's constitutional rights, there is no basis for supervisory liability under § 1983. Accordingly, Chief of Police Barry Pritts is entitled to summary judgment on Plaintiff's federal claims.

D.     *Federal Claims against Borough of Scottdale*

In addition to imposing liability on the individuals who were allegedly directly involved in this incident, Plaintiff also seeks to impose § 1983 liability on the Borough of Scottdale for "creating and maintain[ing] a policy, custom, or practice of failing to properly supervise, train and discipline it's (sic) police officers . . . . The Defendant Borough failed to ensure that it's (sic) police officers would conduct constitutionally adequate investigateation (sic), collect evidence in accordance with proper procedures, follow protocols in investigating suspects and following the duties imposed by the U.S. Supreme Court in Brady v. Maryland relating to the disclosure of material information favorable to criminal defendants." Complaint at ¶ 62.

Because the Court has found that there is no evidence that Officer Elcock violated Plaintiff's constitutional rights, there is no basis for municipal liability under § 1983 either. Therefore, the Borough of Scottdale is entitled to summary judgment on Plaintiff's federal claims. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (where there is no underlying constitutional tort by individual police officers, there can be no liability on the municipality for its actions either).

E. *Remaining State Law Pendent Claims For Violation of Due Process, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, and Negligence*

In addition to the federal constitutional claims addressed above, Plaintiff also brings state law claims for a violation of his due process rights under the Pennsylvania Constitution, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence. The United States Court of Appeals for the Third Circuit has held that if the federal counts of a complaint are dismissed then the district court should "ordinarily refrain from exercising jurisdiction [over the state law claims] in the absence of extraordinary circumstances." *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 195-96 (3d Cir. 1976). *See also Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) ("Under Gibbs jurisprudence, where the claims over which the district court has original jurisdiction are dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.")

Because the Court has granted summary judgment to Defendants on all of Plaintiff's federal claims, and given that there are no extraordinary circumstances which would warrant the exercise of jurisdiction over the pendent state law claims, the Court will decline to exercise supplemental jurisdiction. Accordingly, Plaintiff's claims for violation of his due process rights under the Pennsylvania Constitution, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence under Pennsylvania state law will be dismissed without prejudice. *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530 (3d Cir. 1992) (once all federal claims have been dropped from the case, the case should either be dismissed or transferred to the Pennsylvania Court of Common Pleas pursuant to 42 Pa. Cons. Stat. Ann. § 5103(b)).

## Conclusion

For the reasons discussed *supra*, summary judgment will be granted to Defendants on Plaintiff's federal claims as alleged in Counts I, II, III, IV, and V of the Complaint and the remaining state law claims will be dismissed without prejudice.

An appropriate order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN KOPCZAK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 06cv0766 |
| | ) | |
| BOROUGH OF SCOTTDALE, THE | ) | |
| SCOTTDALE POLICE DEPARTMENT, | ) | |
| POLICE OFFICER DENNIS ELCOCK, | ) | |
| Individually and in his capacity as a Police | ) | |
| Officer for the Scottdale Police Department, | ) | |
| and CHIEF OF POLICE BARRY PRITTS, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER OF COURT

AND NOW, this 31st day of January, 2008, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

1. The Motion for Summary Judgment filed by Defendants is **GRANTED** as to all federal claims alleged in Counts I, II, III, IV, and V of Plaintiff's Complaint;

2. The Pennsylvania state law claims for due process violation, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence are **DISMISSED** without prejudice forthwith; and

3. The Clerk shall docket this case closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc: Leonard E. Sweeney, Esquire
The Law Firm
Email: thelawfirm@pghpa.us

Paul D. Krepps, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
Email: pdkrepps@mdwcg.com